# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| STACY EMBRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No.: 2:18-cv-02116-SGC |
| SOCIAL SECURITY | ) |
| ADMINISTRATION, Commissioner, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

The plaintiff, Stacy Embry, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Embry timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be reversed and remanded.

## I. Procedural History

Embry completed the ninth grade and later obtained her GED. (Tr. at 391). She has previously been employed as an office helper, a pizza delivery driver, a

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 10).

1

telephone operator, and a waitress. (*Id.* at 25, 38-40, 189-90). In her applications for DIB and SSI, Embry alleged she became disabled on January 1, 2014, due to multiple strokes. (*Id.* at 78, 92). She later amended the alleged onset date of her disability to June 28, 2015. (*Id.* at 18). After her claims were denied, Embry requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 124). Following a hearing, the ALJ denied Embry's claims. (*Id.* at 18-27). Embry was forty-three years old when the ALJ issued his decision. (*Id.* at 26-27). After the Appeals Council denied review of the ALJ's decision (*id.* at 1-4), that decision became the final decision of the Commissioner, *see Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Embry commenced this action. (Doc. 1).

## II. **Statutory and Regulatory Framework**

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Furthermore, a claimant must show she was disabled between her alleged initial onset date and her date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v.*

2

*Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(i) and (b), 416.920(a)(4)(i) and (b). At the first step, the ALJ determined Embry met the SSA's insured status requirements through September 30, 2016, and has not engaged in substantial gainful activity since June 28, 2015. (Tr. at 20).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c). At the second step, the ALJ determined Embry has the following severe impairments: (1) residual effects of multiple cerebral vascular accidents and (2) neurocognitive

disorder. (*Id.* at 20).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled. *Id.* at §§ 404.1520(a)(4)(iii) and (d), 416.920(a)(4)(iii) and (d). At the third step, the ALJ determined Embry does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. (Tr. at 21).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at §§ 404.1520(a)(4)(iv) and (e), 416.920(a)(4)(iv) and (e). If the claimant is capable of performing her past relevant work, the Commissioner will find the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Before proceeding to the fourth step, the ALJ determined Embry has the RFC

to perform a limited range of light work. (Tr. at 22-23).[2] At the fourth step, the ALJ determined Embry is not able to perform her past relevant work. (*Id.* at 25).

If the claimant is unable to perform her past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1). If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will find the claimant is disabled. *Id.* at §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1).

At the fifth step, considering Embry's age, education, work experience, and RFC, the ALJ determined there are jobs existing in significant numbers in the national economy that Embry can perform, such as those of marker, cleaner, and power screwdriver operator. (Tr. at 26). Therefore, the ALJ concluded Embry is not disabled. (*Id.* at 27).

---

[2] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and may require "a good deal of walking or standing . . . or . . . involve[] sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

## III. Standard of Review

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to

6

apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. Discussion

On appeal, Embry argues the ALJ (1) improperly discredited her testimony regarding her subjective symptoms and (2) failed to account for the opinion of Dr. Charlotte E. Menzel. (Doc. 13). The undersigned will consider the second alleged error in conjunction with the first.

### A. Evaluation of Subjective Symptoms Testimony

A claimant may establish disability through testimony of pain or other subjective symptoms. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). To do so, she must satisfy the three-part "pain standard," by showing (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain or other subjective symptoms arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or other subjective symptoms. *Id.*; *see also Taylor v. Acting Comm'r of Soc. Sec. Admin.*, 2019 WL 581548, at *2 (11th Cir. 2019) (citing *Dyer*, 395 F.3d at 1210); 20 C.F.R. § 404.1529, 416.929; SSR 16-3p. A claimant's testimony of disabling subjective symptoms supported by medical evidence that satisfies the pain standard is sufficient

7

to support a finding of disability. *Brown*, 921 F.2d at 1236 (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986); *Landry v. Heckler*, 782 F.2d 1551, 1552 (11th Cir. 1986)).

An ALJ may discredit a claimant's subjective symptoms testimony provided he clearly articulates explicit and adequate reasons for doing so. *Brown*, 921 F.2d at 1236; *Taylor*, 2019 WL 581548, at *2 (citing *Dyer*, 395 F.3d at 1210). In evaluating a claimant's testimony and other statements regarding the intensity, persistence, and limiting effects of her symptoms, an ALJ considers all available evidence. 20 C.F.R. § 404.1529(c), 416.929(c).

Several days after a motor vehicle accident in June 2015, Embry presented to the emergency department at St. Vincent's East in Birmingham, Alabama with confusion and slurred speech. (Tr. at 322). Imaging confirmed Embry had experienced a stroke and also showed evidence of past strokes. (*Id.*). In a function report completed on behalf of Embry, Embry's mother stated Embry spends the entirety of her day watching television and sleeping. (*Id.* at 211). Similarly, during the hearing before the ALJ, Embry testified she spends most of her day sitting at home. (*Id.* at 42). Both in the function report and during a consultative physical examination in October 2015, Embry's mother reported Embry generally does not help with any household chores. (*Id.* at 384). During the consultative physical examination, Embry's mother stated that while she believes Embry is physically

capable of performing light, simple chores, Embry cannot process a request to perform a chore or instructions for performing a chore, nor can she comprehend or plan a task. (*Id.*). She also stated the residual stroke symptoms most troublesome to Embry are problems with memory and concentration. (*Id.* at 383). Similarly, in the function report, Embry's mother stated Embry does not follow written or spoken instructions well. (*Id.* at 216). During the hearing, Embry testified she cannot remember the circumstances surrounding her June 2015 stroke or what she watches on television, and she could not describe other problems she experiences with memory and concentration. (*Id.* at 40, 42).

The ALJ determined Embry's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms but that Embry's statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely consistent with the medical and other evidence of record. (*Id.* at 23). The undersigned discerns the following as the ALJ's reasons for discrediting testimony and statements made by Embry and her mother regarding Embry's subjective symptoms:

First, the ALJ noted records from Embry's hospitalization between June 28, 2015, and July 2, 2015, following a stroke, document Embry was experiencing "some" difficulty with speech and "some" left extremity weakness. (*Id.* at 23). The undersigned infers from the use of the word "some" that the ALJ viewed this medical

9

evidence as supporting functional limitations short of disability. This determination is in error to the extent it omits any mention or discussion of a statement made by Dr. Charlotte E. Menzel upon discharging Embry from the hospital. In her discharge summary, Dr. Menzel stated as follows:

> [Embry] should be considered for disability. She is unable to perform a job due to cognitive difficulties. She lacks insight and judgment, and has apraxia[3] which would prevent her from working. This deficit is expected to last greater than one year, as it is due to permanent damage from strokes.

(*Id.* at 323). While Dr. Menzel's belief Embry is unable to work and should be considered for disability are issues reserved to the Commissioner, *see* 20 C.F.R. §§ 404.1527(d) (identifying opinions on issues reserved to Commissioner), 416.927(d) (same), her statements regarding Embry's apraxia and lack of insight and judgment, including her prognosis regarding these deficits, reflect a judgment about the nature and severity of Embry's impairment and, as such, constitute a medical opinion, *see* 20 C.F.R. §§ 404.1527(a)(1) (defining "medical opinion"), 416.927(a)(1) (same). An ALJ is required to state with particularity the weight given a medical opinion and the reasons for doing so. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (holding physician's treatment notes, which included description of

---

[3] "Apraxia is the inability to execute purposeful, previously learned motor tasks, despite physical ability and willingness, as a result of brain damage." *See* https://www.merckmanuals.com/professional/neurologic-disorders/function-and-dysfunction-of-the-cerebral-lobes/apraxia (last visited October 23, 2019).

10

claimant's symptoms, a diagnosis, and a judgment about the severity of claimant's impairments, were medical opinions to which the ALJ was required to assign a particular weight and explain reasons for doing so). An ALJ's failure to clearly articulate the weight assigned to a medical opinion is an error that requires reversal and remand. *See McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) ("In the absence of [a clear articulation of the weight given different medical opinions], it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence[,]" and " 'we will decline to affirm simply because some rationale might have supported the ALJ's conclusion.'" (quoting *Winschel*, 631 F.3d at 1179)). Absent the clear articulation of a legally sufficient basis for discrediting Dr. Menzel's medical opinion, the record of Embry's hospitalization in the summer of 2015 is not an adequate reason for discrediting her subjective symptoms testimony.

Second, the ALJ noted that after discharge from the hospital on July 2, 2015, Embry did not follow up with any physician until April 2016. (*Id.* at 23).[4] While failure to seek or comply with treatment is an appropriate consideration in evaluating a claimant's subjective symptoms testimony, an ALJ cannot draw an adverse

---

[4] While the Commissioner claims Embry denied the option of inpatient rehabilitation following her discharge from the hospital (Doc. 14 at 8), the medical records indicate the inpatient rehabilitation facility contacted by the hospital denied to make a "charity bed" available to Embry (Tr. at 323, 329, 353). Therefore, the Commissioner's reliance on Embry's discharge home, rather than to an inpatient rehabilitation facility, to support the ALJ's determination Embry's alleged subjective symptoms are not as severe as alleged is based on a misreading of the record.

11

inference from a claimant's failure to seek or comply with treatment without considering explanations. *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citing *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)); *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267-68 (11th Cir. 2015); SSR 16-3p. For example, poverty excuses a claimant's failure to comply with recommended treatment. *See Ellison*, 355 F.3d at 1275 (citing *Dawkins*, 848 F.2d at 1213); *Henry*, 802 F.3d at 1268; SSR-16-3p.

The ALJ did not consider possible explanations for the period that elapsed between Embry's release from the hospital in July 2015 and her next contact with a medical provider in April 2016, notwithstanding the existence of evidence in the record that would support a determination Embry's financial circumstances accounted for any delay. For example, during a consultative psychological examination performed by Dr. William B. Beidleman in November 2015, Embry's mother reported she gave her prescription medication to Embry because Embry did not have insurance. (Tr. at 390). Moreover, when Embry established care with a primary care physician in April 2016, she reported she ceased taking cholesterol medication because she could not afford it. (*Id.* at 409). Finally, during an occupational therapy evaluation later that month, Embry's mother reported Embry had never received speech therapy in the past due to financial burdens. (*Id.* at 405). Absent consideration of the foregoing, the period that elapsed between Embry's

release from the hospital in July 2015 and her next contact with a medical provider in April 2016 is not an adequate reason for discrediting Embry's subjective symptoms testimony.

Third, the ALJ discussed medical evidence post-dating Embry's June 2015 stroke that he determined demonstrates Embry's physical ability to perform a limited range of light work. (*Id.* at 24). For example, during the October 2015 consultative physical examination, Dr. Nathaniel Hernandez found Embry had a minimal left-sided limp with no evidence of instability and had full range of motion in her upper and lower extremities, with the exception of only slightly impaired strength (4+/5) in her left elbow flexors, left wrist extensors, left wrist flexors, and left grip. (*Id.* at 385-86). Based on these and other findings, Dr. Hernandez opined Embry had the physical ability to carry ten pounds occasionally and five pounds frequently, stand six hours during a day, walk six hours during a day, and frequently perform postural activities and manipulative activities with her left upper extremity. (*Id.* at 387-88).[5] Additionally, records document that a course of occupational therapy in which Embry participated between April 2016 and June 2016 resulted in some improvement in her physical condition. (*Id.* at 402-03, 396). Regardless of her physical abilities, it is her impaired cognitive functioning on which Embry primarily

---

[5] The ALJ determined Dr. Hernandez's opinion regarding the amount of weight Embry is physically capable of lifting is not supported by other evidence. (Tr. at 25).

13

relies to establish disability.

To that end, as a fourth reason for discrediting Embry's subjective symptoms testimony, the ALJ discussed medical evidence post-dating Embry's June 2015 stroke that he determined demonstrates Embry's cognitive ability to perform a limited range of light work. (*Id.* at 24). With respect to the consultative psychological examination performed by Dr. Beidleman in November 2015, the ALJ found that Embry "reportedly had poor recent and remote memory and a poor fund of general information." (*Id.*). To the extent the ALJ's use of the word "reportedly" implies Embry or her mother alleged these deficiencies to Dr. Beidleman, it is misleading. Based on his examination of Embry's mental status, Dr. Beidleman made findings that while Embry was able to accurately perform some tests of cognition (e.g., she was able to count backwards from 20 to 1 correctly and quickly; she was able to correctly repeat three words immediately and after five minutes; and she knew the president, governor, and situation in Afghanistan), on the whole her concentration and attention "appeared to be poor," her recent and remote memory were "not very good," her general fund of information was "quite poor," her thought process and content were "only fair," and her judgment and insight "appeared to be poor." (*Id.* at 391-92). Dr. Beidleman diagnosed Embry with a mild neurocognitive disorder of multiple etiologies, with probable behavioral disturbance, and opined that while Embry should be able to respond appropriately to fellow employees and

supervisors, she would have difficulty coping with ordinary work pressures. (*Id.* at 24).

Dr. Beidleman's findings Embry was, or appeared to be, lacking in multiple components of mental functioning and his opinion Embry would have difficulty coping with ordinary work pressures are not inconsistent with Embry's subjective symptoms testimony. Moreover, Dr. Beidleman's opinion Embry should be able to respond appropriately to fellow employees and supervisors speaks to Embry's interpersonal capabilities and does not undermine her allegations of disabling limitations related to memory and concentration.

Dr. Beidleman concluded his report by noting Embry's motivation and cooperation during the examination were "uneven and barely adequate for valid results" and that it would be important to obtain a neurological evaluation to confirm Embry's functional neurological difficulties. (*Id.* at 392). Given this equivocation, even if Dr. Beidleman had made findings and expressed opinions inconsistent with Embry's subjective symptoms testimony, whether these findings and opinions constituted substantial evidence supporting the ALJ's credibility determination would be called into serious question.

The ALJ also found that records of speech therapy in which Embry participated between June 2016 and August 2016 show "good results" – namely, that by mid-August 2016, Embry could perform orientation tasks with 100% accuracy

and process increasingly complex units of information with 90% accuracy. (*Id.* at 24, 416). Even so, when Embry returned to her primary care physician in January 2017, she reported that while her left-sided numbness had improved, other symptoms had worsened. (*Id.* at 425). More specifically, she reported her expressive aphasia[6] was worse, which was frustrating her and her family members to the extent her physician discussed creating a communication board; she was experiencing uncontrolled anger outbursts for regular things; and she was wandering through the house at night. (*Id.*). In June 2017, Embry did report to her primary care physician that she was no longer experiencing uncontrolled anger outbursts or wandering through the house at night. (*Id.* at 421). While she also reported her family was no longer feeling frustrated with her expressive aphasia, a notation she was staying with her boyfriend calls into questions whether her expressive aphasia had improved or, rather, her family simply had less exposure to it. (*Id.*). To the extent the ALJ cited the speech therapy records in support of his negative credibility determination without discussing subsequent medical records documenting Embry's worsening symptoms, that determination was in error. *See Chambers v. Astrue*, 671 F. Supp. 2d 1253, 1258 (N.D. Ala. 2009) ("The ALJ cannot pick and choose among

---

[6] "Aphasia is a language dysfunction that may involve impaired comprehension or expression of words or nonverbal equivalents of words." *See* https://www.merckmanuals.com/professional/neurologic-disorders/function-and-dysfunction-of-the-cerebral-lobes/aphasia (last visited October 23, 2019).

a doctor's records to support his own conclusion.")

Fifth, the ALJ determined Embry's alleged very limited daily activities "cannot be objectively verified with any reasonable degree of certainty," and that even if as limited as alleged, "it is difficult to attribute that degree of limitation to [Embry's] medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision." (Tr. at 24-25). Whatever the ALJ considers to be objective evidence verifying a claimant's reported daily activities, courts sitting in this judicial district have noted lack of objective verification is not an adequate reason for discrediting a plaintiff's description of limited daily activities. *See Grier v. Colvin*, 117 F. Supp. 3d 1335, 1353 (N.D. Ala. 2015); *Iheanacho v. Berryhill*, 2018 WL 4680173, at *8 (N.D. Ala. Sept. 28, 2018). Moreover, whatever the "other reasons" to which the ALJ believes Embry's limitations are attributable, he has failed to explain the attribution. Although he cites "the relatively weak medical evidence and other factors discussed in [his] decision" as underlying the attribution, the undersigned has explained in the discussion above why the reasons to which the ALJ alludes for discrediting Embry's subject symptoms testimony are insufficient.

Finally, the Commissioner argues the opinion of the state agency medical consultant supports the ALJ's negative credibility determination. (Doc. 14 at 13). Although the state agency medical consultant did opine Embry's alleged subjective

17

symptoms are only partially credible (Tr. at 84, 98), that opinion is not sufficient evidence on which to rest a negative credibility determination. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) ("The reports of reviewing nonexamining physicians do not constitute substantial evidence on which to base an administrative decision.").

### B. Appropriate Remedy

In *MacGregor*, the Eleventh Circuit held that where an ALJ fails to articulate reasons for discrediting a claimant's testimony regarding his or her subjective symptoms, that testimony must be accepted as true. 786 F.2d at 1054. In *Hale*, the court noted that implicit in *MacGregor's* holding is the requirement that articulated reasons for discrediting a claimant's testimony be supported by substantial evidence. 831 F.2d at 1012. Accordingly, the court held that where an ALJ's reasons for discrediting a claimant's testimony are not supported by substantial evidence, that testimony must be accepted as true. *Id.* The Eleventh Circuit has subsequently declined to apply the holding of *MacGregor* on the ground its decisions preceding *MacGregor* remanded cases upon finding an inadequate credibility determination. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (citing *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984); *Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir. 1982)); *Davis v. Comm'r of Soc. Sec.*, 449 F. App'x 828, 833 n.1 (11th Cir. 2011) (citing *Wiggins*); *see also Cohen v. Office Depot, Inc.*, 204

F.3d 1069, 1072 (11th Cir. 2000) (explaining that where two Eleventh Circuit panel decisions are in conflict, the earliest in time controls). On the persuasive authority of *Lawton* and *Davis*, remand is the appropriate remedy for the ALJ's error in evaluating Embry's testimony regarding her subjective symptoms. *See also Iheanacho*, 2018 WL 4680173, at *2 (remanding case after concluding ALJ's negative credibility finding was not supported by substantial evidence).

## V.     Conclusion

Having reviewed the administrative record and considered all the arguments presented by the parties, the undersigned find the Commissioner's decision is not in accordance with applicable law or supported by substantial evidence. Therefore, the decision is due to be reversed and remanded for further consideration. A separate order will be entered.

**DONE** this 1st day of November, 2019.

_____
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE